IGOR BORIS ET AL. *v.* GARBO LOBSTER
COMPANY, INC., ET AL.
(AC 18500)

Schaller, Hennessy and Daly, Js.

Argued November 30, 1999—officially released May 30, 2000

*Richard S. Cody,* for the appellants (plaintiffs).

*Mark K. Branse,* for the appellee (named defendant).

*Timothy D. Bates,* for the appellees (defendant planning and zoning commission of the city of Groton).

*Opinion*

DALY, J. This is an appeal from the judgment of the trial court dismissing the plaintiffs'[1] appeal from the decision of the defendant planning and zoning commission of the city of Groton (commission) to amend its regulations to add new uses to its waterfront business residential zone (waterfront zone). We affirm the judgment of the trial court.

---

[1] The plaintiffs are Igor Boris, Suzanne M. Boris, Robert I. Boris, Joan M. Haiss, John Hugh Wallace, Jr., Harry G. Curry, Betty Curry and Sarah McGirr. Sherwood Cadorette was one of the parties who initiated the appeal in the trial court. The court determined, however, that pursuant to General Statutes § 8-8 Cadorette was not aggrieved and therefore lacked standing. The court's ruling on the issue of standing has not been challenged.

On appeal, the plaintiffs claim that the court improperly concluded that (1) General Statutes § 22a-104 (e),[2] which requires that the comments of the commissioner of the department of environmental protection be read into the record, is directory and not mandatory, and (2) the ex parte communication of the named defendant Garbo Lobster Company, Inc. (Garbo), with the commission was not prejudicial.

The following facts are undisputed. Garbo acquired 2.8 acres of real property (property) known as 359 Thames Street, which is in the waterfront zone. Garbo is in the business of distributing live lobsters and currently operates from a facility in Stonington. It obtains lobsters from Garbo's facilities outside of Connecticut and from the local lobster fleet. In May, 1996, Garbo proposed an amendment to the zoning regulations that would permit it to operate a lobster distribution facility on the property.[3]

---

[2] General Statutes § 22a-104 (e) provides: "Any proposed municipal plan of conservation and development or zoning regulations or changes thereto affecting the area within the coastal boundary, regardless of whether the municipality affected has adopted a municipal coastal program in accordance with sections 22a-101, 22a-102 and 22a-103, shall be consistent with the policies of section 22a-92 and the criteria of subsection (b) of said section 22a-102. The commissioner shall be notified of any such proposed municipal plan of conservation and development or zoning regulations or changes thereto at least thirty-five days prior to the commencement of the hearing thereon. The commissioner may comment on and make recommendations on such proposals or changes. *Such comment shall be read into the record of the public hearing and shall be considered by the appropriate board or commission before final action on the proposals or changes.* Failure to comment by the commissioner shall not be construed to be approval or disapproval." (Emphasis added.)

[3] Garbo proposed the following amendments to § 314 of the waterfront business residential zone, special permit uses:

"3.14.k Principal or accessory buildings and facilities for the storage, distribution and wholesale or retail sale of fresh seafood, subject to the requirements of Section 4.15, Supplementary Regulations. . . .

"4.15 Principal and Accessory Buildings or Facilities for the Storage, Distribution and Wholesale and/or Retail Sale of Fresh Seafood.

"The storage, distribution or wholesale and/or retail sale of fresh seafood are permitted uses in the Waterfront Business Residential (WBR) zone subject to special permit and site plan approval, and the following conditions:

On June 18, 1996, the commission received the amendment application and set a public hearing date of July 16, 1996. Appropriate notice was given. At the time of the public hearing, proponents and opponents of the amendment were given an opportunity to be heard. The commission tabled the proposed amendment at its August 20, 1996 meeting. By a vote of four to one, the commission approved the proposed amendment at its September 17, 1996 meeting. The plaintiffs claimed to be aggrieved by the action of the commission and appealed to the trial court. The court sustained the commission's action and dismissed the appeal. Following this court's grant of certification, the plaintiffs took the present appeal.[4]

"Review of zoning commission decisions by the Superior Court is limited to a determination of whether the commission acted arbitrarily, illegally or unreasonably. . . . In appeals from administrative zoning decisions, the commission's conclusions will be invalidated only if they are not supported by substantial evidence in the record. . . . The substantial evidence rule is similar to the 'sufficiency of the evidence' standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. It must be enough to justify, if the

"a. The use shall be water dependent.

"b. No outside storage or handling of seafood or waste products shall be permitted, other than delivery and loading.

"c. No canning, drying or other type of industrial-type processing of seafood shall be permitted.

"d. The use shall be an integral component of a commercial seafood operation, comprised of, but not necessarily limited to, seafood handling, commercial fishing, small marina/boat landing, and such other related and permitted uses.

"e. A minimum lot size of 1 acre shall be required."

[4] In their appeal to the trial court, the plaintiffs raised four issues with respect to the commission's decision. They only claim two of those issues on appeal to this court.

trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." (Citations omitted.) *Cybulski* v. *Planning & Zoning Commission*, 43 Conn. App. 105, 110–11, 682 A.2d 1073, cert. denied, 239 Conn. 949, 686 A.2d 123 (1996).

I

The plaintiffs first claim that the court improperly concluded that the portion of § 22a-104 (e) providing that the comments of the commissioner of environmental protection "shall be read into the record" is directory and not mandatory. We do not agree.

The following additional facts are necessary for our resolution of this question of statutory interpretation, which is one of first impression. The court found that the commission notified the commissioner of environmental protection of the proposed amendment on May 28, 1996. The commissioner of environmental protection commented on the proposal by letter to the commission written by Joan Hoelzel, senior coastal planner with the department of environmental protection.[5] At

---

[5] Hoelzel's letter stated: "Thank you for notifying this office of the proposed zoning regulations amendment noted above. In particular, the amendment would allow the specially permitted use of principal or accessory buildings and facilities for the storage, distribution, and wholesale or retail sale of fresh seafood in the Waterfront Business Residence Zone, subject to specific use requirements. Acting as the Commissioner's staff, our office has reviewed it for consistency with the policies and standards of the Connecticut Coastal Management Act (CCMA) [General Statutes § 22a-90 et seq.] and has found it consistent with the provisions of the CCMA. Our specific comments are as follows.

"The application provides a thorough discussion of the intended use of the site and the rationale as to why this proposed zoning regulation's text change is consistent with planning and zoning objectives and the CCMA. Section 3.11 of the zoning regulations states [that] the purposes of the Waterfront Business Residence Zone include the encouragement of waterfront access and water-dependent uses. As properly stated in the application materials, [Garbo] operations constitute a water-dependent use due to the need for a continuous flow of seawater to the facility. Water-dependent uses are defined by the CCMA to be those uses which: 'require direct access to, or location in, marine or tidal waters and which therefore, cannot be

the hearing, Garbo's attorney read into the record only the first page and a portion of the second page of the letter, which dealt directly with the proposed amend-

located inland, including but not limited to: marinas, recreational and commercial fishing and boating facilities . . . shipyards . . . and uses which provide general public access to marine or tidal waters . . . . [General Statutes § 22a-93 (16)].'

"[General Statutes] § 22a-92 (a) (3) of the CCMA requires the commission to give high priority and preference to uses and facilities which are dependent upon proximity to the water or the shore lands immediately adjacent to marine and tidal waters. Further, the CCMA requires the minimization of adverse impacts on future water-dependent development opportunities and activities. Such adverse impacts are defined to include locating non-water-dependent uses at sites that are physically suited for water-dependent uses for which there is reasonable demand or have been identified for water-dependent uses in the plan of development of the municipality or the zoning regulations [General Statutes § 22a-93 (17)]. The approval of this regulation amendment would allow for an additional water-dependent use along this stretch of Thames Street. Such use would be consistent with not only the CCMA, but also with Section 3.14 of the city's zoning regulations, the city's current Plan of Development, and its recently proposed update which encourage water-dependent development along the riverbank in this party of the city. Therefore, we recommend that the commission approve this proposed amendment.

"Though not a direct zoning regulation amendment concern of the commission at this time, we applaud the applicant's intent to open up this waterfront property to the public through improved pedestrian access around and through the site and through possible use of the site as a Heritage Park passenger ferry stop. The incorporation of a public access component into the future development of the site would be consistent with the intent of the city's plan of development as well as the policies and standards of the CCMA. Therefore, we also recommend that the applicant work closely with the city and our office on any proposed future development of the site in order to include a public access component which meets the needs of all interested parties.

"State and Federal Permits

"The approval of this text amendment could result in site development which includes a variety of in-water activities requiring both state and federal authorizations. Therefore, we would like to take this opportunity to make the applicant aware of the need for permits for various aspects of the intended site development.

"As indicated in the provided application materials, a state structures and dredging permit (SD-JB-89-110) was issued by this office for in-water activities associated with the proposed development of a 100-slip marina at this site. However, prior to performing any work in accordance with this permit on either new or existing in-water structures, the applicant should

ment before the commission and was favorable to the amendment. The attorney summarized the remainder of the letter, which concerned permits that might be needed in the future if the amendment were adopted. Copies of the entire letter were made available to the public. The plaintiffs claim that § 22a-104 (e) requires that the entire letter be read into the record, and failure to do so constitutes a procedural defect that invalidates the commission's adoption of the amendment.

"Statutory interpretation is a question of law and, therefore, our review is plenary. *North Haven* v. *Planning & Zoning Commission*, 220 Conn. 556, 561, 600

---

contact staff in this office regarding the proper transfer of this permit to the current property owner and the specific in-water activities authorized by the permit. The applicant should also be aware that the permit expires on February 17, 1997. Yvonne Bolton of the Office of Long Island Sound Programs (OLISP) permit staff can be contacted at . . . regarding the specifics of permit number SD-JB-89-110.

"The submitted materials indicate the applicant's desire to raise sunken vessels near the existing dock on site. Such activities are not included in SD-JB-89-110 and would also require authorization, in particular, a certificate of permission (COP), from this office. OLISP permit staff should be contacted regarding the COP process prior to removing these structures.

"Should a lobster distribution facility be developed which necessitates the withdrawal of water from the Thames River, the applicant would likely need a water diversion permit from the [department of environmental protection's] Water Bureau. Appropriate staff can be contacted at . . . regarding that Bureau's specific permit requirements. In addition, the installation of a water intake structure would require a permit from OLISP. Once again, information on OLISP permit requirements can be obtained by calling . . . .

"As a final permit consideration, the [U.S.] Army Corps of Engineers should be contacted regarding their specific permit requirements for in-water activities. They can be contacted at . . . .

"We hope that these comments are helpful. They are being made in response to the review requirements contained in Section 22a-104 (e) of the Connecticut General Statutes, which requires that notification be sent to the Commissioner of Environmental Protection at least 35 days prior to the commencement of the public hearing. Once notified, our office is responsible for reviewing the proposal's consistency with the policies of Section 22a-92 and the criteria of Section 22a-102 (b) of the CCMA.

"Should you have any questions regarding this letter or any other coastal management or Long Island Sound matter, please contact me at . . . ."

A.2d 1004 (1991). When interpreting statutes, we rely on well established principles of statutory construction. [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. *Castagno* v. *Wholean*, 239 Conn. 336, 339, 684 A.2d 1181 (1996). It is axiomatic, however, that when the statutory language is clear and unambiguous, construction of the statute by reference to its history and purpose is unnecessary. See *Winslow* v. *Lewis-Shepard, Inc.*, 216 Conn. 533, 538, 582 A.2d 1174 (1990)." (Internal quotation marks omitted.) *National Loan Investors Ltd. Partnership* v. *Heritage Square Associates*, 54 Conn. App. 67, 71–72, 733 A.2d 876 (1999).

"In general, the word 'shall' is mandatory, not directory. . . . Use of the word 'shall,' however, does not always indicate that a clause is mandatory. . . . The determination must focus on whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the [regulatory] provision is mandatory. . . . If, however, the . . . provision is designed to secure order, system and dispatch . . . it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. . . . Such a [regulatory] provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply. . . . Where the regulation contains no penalty for noncompliance, or where the language purports to establish procedure, it is deemed to be directory." (Citations

omitted; internal quotation marks omitted.) *Lauer* v. *Zoning Commission*, 44 Conn. App. 542, 547, 690 A.2d 893 (1997), rev'd in part on other grounds, 246 Conn. 251, 716 A.2d 840 (1998).

We conclude that § 22a-104 (e) is directory in nature, rather than mandatory. First, we observe that the statute does not require the commissioner of environmental protection to comment; General Statutes § 22a-104 (e) provides that "the commissioner *may* comment . . . ." (Emphasis added.) Second, the statute does not contain language to invalidate actions taken by the commission if the commissioner's comments are not read into the record. Finally, the commissioner's comments are in the form of an advisory opinion because General Statutes § 22a-110 provides that the commissioner "may appeal . . . whether or not he has appeared as a party before the municipal board or commission. . . ." For these reasons, we hold that the court did not abuse its discretion in dismissing the plaintiffs' appeal with respect to this claim.[6]

II

The plaintiffs next claim that the court improperly determined that they were not prejudiced by Garbo's ex parte communication with the commission. We disagree.

The following facts, as found by the court, are relevant to this claim. At the conclusion of the public hearing, the commission voted unanimously to table further action on the proposed amendment. Sometime after the meeting, Michael J. Murphy, the city planner, telephoned Keith B. Neilson, Garbo's engineer, to inform him that a limited number of commission members

---

[6] Assuming arguendo that § 22a-104 (e) is mandatory, we conclude that there was substantial compliance therewith. The salient pages of the letter were read into the record with a summary of the nonpertinent pages, and copies of the entire letter were made available to the public.

might attend the commission's August, 1996 meeting. In response to this information, Neilson wrote a letter to Murphy dated August 20, 1996,[7] acknowledging his telephone call and asking Murphy to ask the commission to table the proposed amendment until the September, 1996 meeting "so that it can receive a favorable review by the entire Commission." In asking Murphy to make the request, Neilson acknowledged the impropriety of his communicating with the commission while the proposal was being deliberated. According to a date stamp it bears, the letter was received in the office of the city planner on August 23, 1996.

The commission's August meeting was held on August 20, 1996, where the following action was taken, as recorded in the minutes of the meeting. "Proposed Zoning Regulations Amendments, Section 3.14.k and 4.15 (Garbo Lobster Co., Applicant.) Staff stated that applicant anticipates this issue to be resolved at September meeting. Motion to TABLE made by [Wallace] Frankopoulos, seconded by [Marion] Orkney. VOTED: UNANIMOUS."

"An ex parte communication raises a rebuttable presumption of prejudice. Once the plaintiff shows that an improper ex parte communication has occurred, the burden of showing that the communication was harmless shifts to the party seeking to uphold the validity of the zoning commission's decision. *Blaker* v. *Planning & Zoning Commission*, [212 Conn. 471, 480, 562 A.2d 1093 (1989)]. The presumption of prejudice may be rebutted

---

[7] The August 20, 1996 letter from Neilson to Murphy states: "We appreciate your call regarding the possibility of a limited number of Commissioners being present at tonight's meeting and respectfully request that our application for amendments to the Zoning Regulations be tabled until next month's meeting so that it can receive a favorable review by the entire Commission.

"We would appreciate it if you would make this request to the Commission tonight on our behalf since we are not supposed to have any contact with them while they deliberate their decision. Your assistance is appreciated."

by evidence that the ex parte evidence or testimony was not received by the commission or was not considered by it and, therefore, did not affect the commission's final decision. R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 47.4." *Daniel* v. *Zoning Commission,* 35 Conn. App. 594, 597, 645 A.2d 1022 (1994).

The court determined that no improper ex parte communication had occurred. It held that the communication was on a purely procedural matter and was initiated not by Garbo or anyone on its behalf, but by Murphy, who easily could have communicated any concern he may have had about the taking of any action at the August meeting directly to the commission without involving Neilson. Furthermore, the letter, which merely confirmed the substance of the conversation, was not received by Murphy until three days after the meeting. Even if the letter were improper, it is difficult to comprehend how Murphy's involving Neilson prejudiced the plaintiffs because the letter did not go to the substance of the proposed amendment.

The judgment is affirmed.

In this opinion the other judges concurred.