I. STATEMENT OF APPEAL
The plaintiff, Nick Nicholas, appeals from the decision of the defendant, the zoning board of appeals of the town of Wilton, sustaining the Wilton zoning enforcement officer's (ZEO) denial of an application for a zoning permit. Nicholas appeals pursuant to General Statutes §8-8.
 II. BACKGROUND
The record reveals the following facts. Since 1976, Nicholas has owned the subject property, a parcel of land located at 92 Hulda Hill Road, Wilton, Connecticut, in a Residence 2 zone (R-2 zone). (Return of Record [ROR], Items A; B-1, exhibit h; G-3.) The property, known as Lot 1, is part of a three-lot subdivision, which was created in 1969 by Nicholas' predecessors in title. James Woolson and Beverly Woolson. (ROR, Items B-1, exhibits a-d; C-2, p. 3; G-1.) The subdivision plan, including the map (#2829), was approved by the Wilton planning and zoning commission (commission), with conditions, and was recorded in the Wilton land records. (ROR, Items B-1, exhibits a-d; D-2.) At the time the subdivision was approved, the owners of Lot 1 held title to parcels B and D; an adjoining lot owner held title to parcel A; and another adjacent lot owner held title to Parcel C. (ROR, Item B-1, exhibits e, g.) Notes written on the subdivision map indicate that after two separate exchanges of property, Lot 1 is to consist of parcels A and C. (ROR, Item G-1.) Parcels C and D were exchanged in 1970; (ROR, Item B-1, exhibits e-f.); however; the exchange of parcels A and B never occurred. (ROR, Items B-1, exhibit h; C-2, pp. 2-5.) Presently, Lot 1 consists of parcels B and C. (ROR, Items B-1, exhibit h; C-2, p. 2-5.)
On September 20, 1999, Nicholas applied for a zoning permit to construct a single family residence on Lot 1. (ROR, Items B-3; D-2.) On CT Page 443 September 23, 1999, the ZEO denied the application stating that the property for which Nicholas seeks a zoning permit "is not a valid building lot." (ROR, Item D-2.) In the letter denying the application, the ZEO noted that the basis for denying the application was more fully explained in the opinion letter of Marianne Dubuque, counsel acting on behalf of the town of Wilton. (ROR, Item D-2.) Additionally, the ZEO also noted that "the property shown on the map [submitted by Nicholas] is not the property shown for that address on subdivision map #2829 which is on file in the Town of Wilton land records." (ROR, Item D-2.) Nicholas filed an application for appeal with the ZBA on October 21, 1999, on the ground that the property for which he seeks a zoning permit is a valid building lot. (ROR, Items A, D-3.)
Notice of the public hearing was published in the Norwalk Hour on December 11, 1999, and in the Wilton Bulletin on December 16, 1999. (ROR, Item B-1.) The ZBA conducted a public hearing on December 20, 1999 to consider Nicholas' appeal. (ROR, Items C-2; F.) Following the testimony of several witnesses, including Nicholas, John Koster, the ZEO; Roland Gardner, a licensed surveyor who had prepared the original subdivision map and the map submitted with the zoning permit application; and Robert Fuller (presently representing Nicholas in this appeal), the ZBA closed the public hearing and announced that a decision would be rendered at the January meeting. (ROR, Item F, pp. 31-32.)
On January 19, 2000, the ZBA reconvened and unammously voted to sustain the denial of Nicholas' application for a zoning permit "on grounds that the [ZEO's] written opinion is valid and reasonable." (ROR, Item C-3.) The ZBA's decision was published in the Wilton Bulletin on January 27, 2000. (ROR, Item E-2.) Nicholas now appeals the decision of the ZBA.
 III. JURISDICTION
General Statutes § 8-8 governs an appeal from a decision of a zoning board to the superior court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.)Cardoza v. Zoning Commission, 211 Conn. 78, 82, 557 A.2d 545 (1989).
 A. Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). A plaintiff's status as owner of the subject property establishes CT Page 444 aggrievement. Winchester Woods Association v. Planning and ZoningCommission, 219 Conn. 303, 308, 592 A.2d 953 (1991).
Nicholas alleges that he owns the property that is the subject of this appeal. (Complaint, ¶¶ 1, 15.) Additionally, a deed, which was submitted as part of the return of record, indicates that Nicholas is the owner of the subject property. (ROR, Item B-1, exhibit h.)
 B. Timeliness of the Appeal and Service of Process
General Statutes § 8-8 (b) provides, in pertinent part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (f) and (g)] of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Service of process "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality." General Statutes § 8-8 (e), now § 8-8 (f).
The ZBA's decision was published in the Wilton Bulletin on January 27, 2000. (ROR, Item E-2.) Service of process was made on the town clerk of the town of Wilton and the chairman of the ZBA on February 8, 2000. (Sheriff's return.) Accordingly, this court finds that service of process was made in a timely manner on the proper parties.
 IV. SCOPE OF REVIEW
When the action of a zoning enforcement officer is the subject of an appeal to the zoning board of appeals, the decision of the board, and the record before it is the focus of the court's review. Caserta v. ZoningBoard of Appeals, 226 Conn. 80, 82, 626 A.2d 744 (1993). The court does not focus on the decision of the zoning enforcement officer when reviewing the decision of the board. Id. "Local zoning boards are vested with a liberal discretion. . . . A trial court must, however, review the decision of a zoning board of appeals to determine if the board acted arbitrarily, illegally or unreasonably." Wnuk v. Zoning Board ofAppeals, 225 Conn. 691, 695-96, 626 A.2d 698 (1993). "The court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support its findings." (Internal quotation marks omitted.) Conetta v. Zoning Board of Appeals,42 Conn. App. 133, 138, 677 A.2d 987 (1996). In searching the record, the court must determine whether it contains substantial evidence from which the ultimate finding could be inferred. Grillo v. Zoning Board ofCT Page 445Appeals, 206 Conn. 362, 369, 537 A.2d 1030 (1988). "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) Bloom v. ZoningBoard of Appeals, 233 Conn. 198, 206, 658 A.2d 559 (1995).
 V. DISCUSSION
The ZBA sustained the ZEO's denial of Nicholas' application for a zoning permit. Nicholas appeals that decision on the ground that the ZBA acted arbitrarily, illegally and in abuse of its discretion. Nicholas alleges that: (1) record evidence supports a finding that Lot 1, with or without parcel A, conforms with the zoning regulations in effect in 1969; (2) the notes on the subdivision map pertaining to the exchanges of parcels of land were not conditions to the approval of the subdivision; (3) Lot 1, without parcel A, is protected by General Statutes § 8-26a
and § 29-4 F (2)(a) of the zoning regulations as a nonconforming lot; (4) the town of Wilton and its officials are estopped from denying the zoning permit because of a ruling issued in 1975; and (5) the denial of the zoning permit "amounts to an unconstitutional taking."
Nicholas argues that the notes written on the subdivision map regarding exchanges of parcels of land were merely advisory, and not mandatory, and that the ZBA's decision on this issue contradicts the evidence presented at the hearing by Nicholas' witnesses. Nicholas further contends that Lot 1 conforms with the minimum lot width requirement of the 1966 Wilton zoning regulations that were in effect in 1969 (1969 zoning regulations), whether or not the exchange of parcels A and C occurred. Nicholas also argues that Lot 1 is protected from subsequent changes in the zoning and subdivision regulations by General Statutes § 8-26a, and § 29-4 F (2)(a) of the current zoning regulations. Additionally, Nicholas argues that Lot 1 meets the current Wilton zoning regulations lot width, frontage and setback requirements. Lastly, Nicholas argues that the denial of the zoning permit amounts to a confiscation.[1]
The ZBA asserts that Nicholas failed to demonstrate that the ZBA's decision to sustain the denial the application for a zoning permit was arbitrary, capricious or an abuse of its discretion. The ZBA further argues that Lot 1, without parcel A, is not the lot that was approved in 1969, and that the combination of parcel A with Lot 1 was "akin to [a CT Page 446 condition] proposed by the subdivision applicant and accepted by the Commission," despite the testimony of Nicholas' witnesses. (ZBA's Brief, p. 14.) Additionally, the ZBA contends that it was "fully within its rights to disregard the opinions of other attorneys and a surveyor, and to rely on the opinion of its own counsel." (ZBA's Brief, p. 20.) The ZBA also argues that without parcel A, Lot 1 does not meet the minimum lot width requirement established by the 1969 or the current zoning regulations, therefore, the lot is not a valid building lot. Moreover, because Lot 1 is not an approved subdivision lot, the ZBA contends that General Statutes § 8-26a and § 29-4 F (2)(a) of the current zoning regulations do not apply to this appeal. In regards to Nicholas' confiscation claim, the ZBA argues that the denial of the application for a zoning permit does not amount to a confiscation of Lot 1.
 A. Whether the ZBA correctly interpreted § 29.6 of the 1969 Wilton Zoning Regulations.
The parties do not dispute that, pursuant to § 29-6 of the 1969 zoning regulations, a lot in an R-2 zone must measure 150 feet in width at the building line. The location of the building line, however, is in dispute. Nicholas argues that § 29-6 requires that the building line be at or behind the front yard setback line, which is forty feet from the road. The ZBA argues, however, that under § 29-6, the forty foot front yard setback line constitutes the building line where the width of the lot must measure at least 150 feet.[2]
"[T]he interpretation of provisions in the ordinance is . . . a question of law for the court . . . The court is not bound by the legal interpretation of the ordinance by the [ZBA]. . . . Rather, the court determines legislative intent from the language used in the regulations. . . . We interpret an enactment to find the expressed intent of the legislative body from the language it used to manifest that intent. . . . Zoning regulations, as they are in derogation of common law property rights, cannot be construed to include or exclude by implication what is not clearly within their express terms. . . . The words used in zoning [regulations] are to be interpreted according to their usual and natural meaning and the regulations should not be extended, by implication, beyond their expressed terms." (Internal quotation marks omitted.) Children's School, Inc. v. Zoning Boardof Appeals, 66 Conn. App. 615, 622, ___ A.2d ___ (2001). Furthermore, when interpreting statutory language, the court must read the statute as a whole. Hyllen-Davey v. Planning and ZoningCommission, 57 Conn. App. 589, 595, 749 A.2d 682, cert. denied, 253 Conn. 926, 754 A.2d 796 (2000). CT Page 447
Section 29-6 A of the 1969 Wilton zoning regulations provides, in part: "No lot shall be less in area or less in width than set forth below and no residential structure shall be built on or moved onto a lot containing less than the area set forth below for each family unit contained therein. The width of a lot shall be measured in a straightline in general parallel to the street, which line shall be touching butnot in front of the building line required by these regulations. . . ." (Emphasis added.) Section 29-6 A also requires that a lot in an R-2 zone must be at least two acres in area and have a minimum lot width of 150 feet.
Section 29-6 C (1) of the 1969 zoning regulations requires that a lot in an R-2 zone have a front yard not less than forty feet in depth, side yards not less than thirty feet in width and a rear yard not less than forty feet in depth. Additionally, in an R-2 zone, "[n]o structure shall be . . . less than forty . . . feet from any highway line. . . ." Wilton Zoning Regulations § 29-6 C (2).
The record reveals the following regarding the minimum lot width requirement of § 29-6 of the 1969 zoning regulations. At the public hearing, Gardner, a licensed surveyor who prepared the original subdivision map as well as the map submitted with Nicholas' application for a zoning permit, testified at the public hearing on December 20, 1999, that § 29-6 requires that the width of lot is to measure at least 150 feet at or behind the forty foot setback line. (ROR, Item F, p. 17.) Fuller also testified at the public hearing that the setback requirement in 1969 was forty feet, therefore, "you have to go back at least 40 feet and if your lot is not 150 feet wide you have to go back until you get 150 feet, and at that point, beyond that, you can put your house." (ROR, Item F-1, pp. 19-20.) The ZEO testified, however, that the building line required by the 1969 regulations is the forty foot setback line. (ROR, Item F-1, p. 31.) "So that means that a line, which is touching that 40-foot generally parallel with the front, front lot line, shall be 150 feet in width." (ROR, Item F-1, p. 31.)
The record also demonstrates that the ZBA unanimously denied Nicholas' appeal "on the ground that the [ZEO's] written opinion is valid and reasonable." (ROR, Item C-3.) The ZEO's written opinion reveals that Nicholas' application for a zoning permit was denied because Lot 1 was determined to be an invalid building lot. (ROR, Item D-2.) The ZEO further stated that the basis for his decision is more fully explained in the opinion letter by Dubuque, counsel acting on behalf of the town. (ROR, Item D-2.) Dubuque states in her opinion letter that § 29-6 A of the 1969 zoning regulations requires that a lot have a minimum width of 150 feet at the building line, and because of the irregular shape of Lot 1, the minimum width requirement cannot be met. (ROR, Item D-1, pp. CT Page 448 3-4.) The location of the building line, however, is not discussed in Dubuque's letter. (ROR, Item D-1.) The record also reveals that, at the January 19, 2000 ZBA meeting, and prior to voting on Nicholas's appeal, a letter from Dubuque to the town planner, Wendy Johnson, was read aloud.[3] (ROR, Item C-3.) In this letter, Dubuque asserts that § 29-6 A requires that the width of the lot is "to be calculated at a point where it is `touching' the building line." (ROR, Item D-6.) Dubuque further asserts that given the ordinary meaning of touch, "the width requirement under [§] 29-6
A must be met at the building line, not at a point behind it." (ROR, Item D-6.) Dubuque does not discuss, however, the location of the building line. (ROR, Item D-6.)
This court finds that the ZBA erroneously interpreted the meaning of "building line" as used in § 29-6 of the 1969 zoning regulations. Subsection A of § 29-6 requires that the width of the lot, which must be at least 150 feet, "shall be measured in a straight line in general parallel to the street. . . ." Subsection A also requires that the lot width requirement must be met at a point that "[touches] but [is] not in front of the building line required by these regulations. . . ." Additionally. subsection C (1) requires that a lot in an R-2 zone have a front yard setback not less than forty feet, and subsection C (2) requires that "[n]o structure shall be . . . less than forty . . . feet from any highway line in [an R-2 zone]." This court finds, therefore, that reading § 29-6 as a whole and applying the plain and ordinary meaning to the language contained therein, it is reasonable for this court to interpret "building line" as located at a point at or behind the forty foot front yard setback line. "Common sense must be used in interpreting a zoning regulation, because it is assumed that the zoning authority intended to accomplish a reasonable and rational result."Daughters of St. Paul, Inc. v. Zoning Board, 17 Conn. App. 53, 66-67,549 A.2d 1076 (1988).
 B. Whether There is Substantial Evidence in the Record to Support the ZBA's Decision to Deny Nicholas' Appeal Based on Lot 1 Not Being a Valid Building Lot
Nicholas argues that Lot 1, without parcel A, is a buildable lot, and that the notes on the subdivision map pertaining to exchanges of parcels of property are not mandatory. Nicholas contends that the commission approved the subdivision plan with conditions, however, these conditions do not include, as a requirement to approval, the exchanges of the parcels of property that are noted on the subdivision map. Additionally, Nicholas argues that because General Statutes § 8-26 requires a subdivision to conform to the applicable zoning regulations, the CT Page 449 commission would not have approved a subdivision plan that consisted of a lot in violation of the zoning regulations. Moreover, Nicholas contends that Lot 1, without the exchange of the parcels of property, conforms with the 1969 zoning regulations. Nicholas argues that, although one of the property exchanges did eventually occur, the exchange of parcel B for parcel A was not necessary to achieve the 150 foot minimum lot width, as required by the 1969 zoning regulations.
The ZBA argues that the notes on the subdivision map pertaining to the exchanges of parcels of land are mandatory conditions, and that because the exchange between parcels A and B never occurred, Lot 1 is not a buildable lot. The ZBA contends that Lot 1, without Parcel A, is not the Lot 1 that was approved by the commission in 1969. The ZBA supports its argument with the contention that the exchange of parcel B for parcel A is necessary because without parcel A, Lot 1 does not satisfy the minimum lot width requirement of the 1969, or the current, zoning regulations. Additionally, the ZBA contends that "[t]he Z-shaped lines connecting parcels [on the subdivision map] are interpreted to mean that those parcels are part of the same lot."[4] (ZBA's Brief, p. 15.)
General Statutes § 8-26 governs the approval of subdivision plans. Section 8-26 provides, in relevant part: "All plans for subdivisions . . . shall be submitted to the commission with an application in the form to be prescribed by it. The commission shall have the authority to determine whether the existing division of land constitutes a subdivision . . . under the provisions of this chapter, provided nothing in this section shall be deemed to authorize the commission to approve any such subdivision . . . which conflicts with applicable zoning regulations." "[W]here . . . the approval [of the subdivision] is subject to a condition over which neither the commission nor the subdivision applicant has control, such action is not an "approval' within [General Statutes §] 8-26. . . . [W]here a commission makes the approval of a plan of subdivision subject to a condition the fulfillment of which is within the control of neither the commission nor the applicant . . . the commission has "failed to act' within the intendment of General Statutes [§§] 8-26 and 8-28 . . .Carpenter v. Planning and Zoning Commission, 176 Conn. 581,592-93, 409 A.2d 1029 (1979).
The record indicates that on March 24, 1969, the commission approved the subdivision application by the following resolution: "That the subdivision plan for property of James B. Woolson and Beverly D. Woolson on the easterly side of Hulda Hill Road, submitted by James E. Woolson and Beverly D. Woolson, owner, as shown on the map entitled: Subdivision Map . . . be and it is approved subject to [seven listed conditions]. . . ." (ROR, Item B-1, exhibits a-b, d.) The record further CT Page 450 indicates that the approved subdivision map was recorded in the Wilton land records on April 18, 1969. (ROR, Items B-8, p. 2; G-1.) Additionally, the record reveals that the following notes were written on the subdivision map:
 "Note: Parcel `A' not constituted as a separate building lot, but is to be combined with Lot 1.
 "Note: Parcel `B' not constituted as a separate building lot, but is to be combined with adjoining land of Sally D. Lefferts.
 "Note: Parcel `C' not constituted as a separate building lot, but is to be combined with Lot 1.
 "Note: Parcel `D' not constituted as a separate building lot, but is to be combined with adjoining land of Edith H. Nolder."
(ROR, Item G-1.)
As discussed in the previous section, the 1969 zoning regulations required that lots in an R-2 zone have a forty foot front yard setback and that the width of the lot measure at least 150 feet at the building line. Wilton Zoning Regulations § 29-6 A, C. The regulations also required that the width of the lot was to be measured in a straight line, generally parallel with the road, at a point at or behind the front yard setback line. Wilton Zoning Regulations § 29-6 A, C.
The record demonstrates that Gardner, a licensed surveyor who prepared the original subdivision map, testified at the December 20, 1999 public hearing as to the yard requirements under the 1969 zoning regulations and stated that the map depicting the proposed residence and the original subdivision map, which are a part of the return of record, demonstrate that the lot is in compliance with the 1969 zoning regulations. (ROR, Items F-1, pp. 14-17; G-1, 3.) Gardner also testified that in accordance with the 1969 zoning regulations, the width of Lot 1 measures 150 feet at the building line, which is located 139 feet from the road. (ROR, Item F-1, p. 18.) Gardner further testified that, with or without the exchange of parcel B for parcel A, Lot 1 is in conformity with the 1969 zoning regulations, and, thus, Lot 1 is a valid buildable lot. (ROR, Item F-1, pp. 16-17.)
The record further reveals that Fuller, appearing as a witness at the CT Page 451 public hearing on behalf of Nicholas, also testified that the notes on the subdivision map were not conditions because they were not made a part of the listed conditions at the time the commission approved the subdivision, and that the exchanges of the parcels of property were not necessary to comply with the 1969 zoning regulations. (ROR, Item F, pp. 18-27.) Fuller also testified that the location of the proposed residence on Lot 1 complies with the minimum lot width requirement of the 1969 zoning regulations. (ROR, Item F, pp. 19-20.)
"In appeals from administrative zoning decisions, the commission's conclusions will be invalidated only if they are not supported by substantial evidence in the record. . . . The substantial evidence rule is similar to the `sufficiency of the evidence' standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." (Internal quotation marks omitted.) Boris v. Garbo Lobster Company,Inc., 58 Conn. App. 29, 32-33, 750 A.2d 1152, cert. denied, 254 Conn. 910,759 A.2d 504 (2000).
This court finds, based on the evidence before it, that the ZBA's decision to deny Nicholas' appeal is not supported by substantial evidence in the record because the record is devoid of any evidence to support a finding that Lot 1, without parcel A, is not a buildable lot. The ZBA did submit, however, as evidence at the trial before this court,Hickey, J., a copy of a petition to the board of tax review for correction of assessed value of property, signed by Nicholas and dated February 26, 1985. (ZBA's exhibit 1, September 17, 2001.) Nicholas was petitioning for a correction of the assessed value of Lot 1 because Lot 1 was "assessed on the basis of being buildable which it is not." (ZBA's exhibit 1, September 17, 2001.) Nonetheless, this court finds that the petition is not substantial evidence to support a finding that Lot 1, without parcel A, is not a valid building lot.
Furthermore, this court finds that the record does not support a finding that the notes written on the subdivision map regarding the exchanges of the parcels of property are mandatory, rather, there is substantial record evidence to support a finding that the notes are not mandatory nor akin to a condition to approval. This evidence includes: (1) the testimony of Gardner, that the notes were not made conditions to the approval of the subdivision, and Gardner is an experienced surveyor who has first hand knowledge of the original subdivision map since he is the one who prepared it; and (2) the testimony of Gardner, supported by the submission of the 1969 subdivision map and the map submitted with CT Page 452 Nicholas' application, that without Parcel A, Lot 1 satisfies the minimum lot width requirement set forth in § 29-6 of the 1969 zoning regulations.
 C. Whether Lot 1 is Protected as a Nonconforming Lot.
Nicholas contends that Lot 1 is protected as a nonconforming lot by General Statutes § 8-26a and § 29.4 F of the Wilton zoning regulations. Nicholas argues that because the subdivision map, which contains Lot 1, was approved by the commission, and was signed and recorded in the land records, it, therefore, met the zoning requirement in effect at that time. Nicholas further asserts that because Lot 1, without parcel A, was in compliance with the minimum lot width required by the 1969 zoning regulations, Lot 1 need not conform with subsequent changes in the zoning regulations. The ZBA argues, however, that General Statutes § 8-26a and § 29-4 F of the zoning regulations do not apply to the present appeal because Lot 1, without parcel A, is not an approved lot, therefore, it is not protected from subsequent zoning changes as a nonconforming lot.
Section 8-26a (b) provides: "Notwithstanding the provisions of any general or special act or local ordinance, when a change is adopted in the zoning regulations or boundaries of zoning districts of any town, city or borough, no lot or lots shown on a subdivision plan for residential property which has been approved, prior to the effective date of such change, by the planning commission of such town, city or borough, or other body exercising the powers of such commission, and filed or recorded with the town clerk, shall be required to conform to such change."
Section 29-4 F (2)(a) of the Wilton zoning regulations, which pertains to nonconforming lots, provides: "In any single-family Residential district, a single-family dwelling and customary accessory buildings may be erected on a lot of record as of the effective date of adoption or amendment to these Regulations, notwithstanding requirements imposed by other provisions of these Regulations. Such lot shall be in separate ownership and shall not have continuous frontage with other lots under the same ownership. This provision shall apply even though such lot fails to meet the lot area and/or lot width requirements of the district in which such lot is located, provided that the yard dimensions and requirements other than those applying to lot area and/or lot width shall conform to the requirements of the district in which such lot is located."
"A nonconformity is a use or structure prohibited by the zoning CT Page 453 regulations but is permitted because of its existence at the time the regulations are adopted." Adolphson v. Zoning Board of Appeals,205 Conn. 703, 710, 535 A.2d 799 (1988). To be considered a nonconforming use, "[f]irst, [the use] must be lawful and second, it must be inexistence at the time the zoning regulation making the use nonconforming was enacted." (Emphasis in original.) Cummins v. Tripp, 204 Conn. 67,91-92, 527 A.2d 230 (1987). A lot that is undeveloped when later zoning regulations are adopted, is not in use, and, therefore, not protected as a nonconforming lot. Miller v. Zoning Board of Appeals, 36 Conn. App. 98,105, 647 A.2d 1050 (1994). A lot is exempt, however, from changes in zoning regulations as a nonconforming lot, under General Statutes §8-26a (b), if the property is part of a valid subdivision approved before the adoption of the new regulations. Id. "The [property owner] bears the burden of proving the existence of a nonconforming use. . . ." (Citation omitted; internal quotation marks omitted.) Bauer v. Waste Management ofConnecticut, Inc., 234 Conn. 221, 240, 662 A.2d 1179 (1995).
Evidence and testimony contained in the return of record reveals that Lot 1, without parcel A, is part of an approved three-lot subdivision, and that the subdivision plans were signed and recorded in the Wilton land records. (ROR, Items B-1, exhibits a-d; C-2; G-1.) The record also reveals that Lot 1, without parcel A, conforms with the 1969 minimum lot width requirement of 150 feet. (ROR, Items F-1, pp. 18-20; G-1, 3.) The record further reveals that § 29-5 D of the current zoning regulations, effective March 15, 1994, and revised December 1, 1998, requires a minimum lot width of 200 feet in an R-2 zone. (ROR, Item H, p. 66.)
"It is the board's responsibility, pursuant to the statutorily required hearing, to find the facts and to apply the pertinent zoning regulations to those facts." (Internal quotation marks omitted.) Wing v. Zoning Boardof Appeals, 61 Conn. App. 639, 643-44, 767 A.2d 131. cert. denied,256 Conn. 908, 772 A.2d 602 (2001). "Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court has to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . ." (Citation omitted; internal quotation marks omitted.) Spero v. Zoning Board ofAppeals, 217 Conn. 435, 440, 586 A.2d 590 (1991).
Mindful that the ZBA is entitled to some discretion in enforcing its regulations, this court finds that the ZBA's contention that Lot 1, without parcel A, is not protected as a nonconforming lot, is not supported by substantial record evidence. Furthermore, this court finds CT Page 454 that Lot 1, without parcel A, is protected by General Statutes § 8-26a
and § 29.4 F (2)(a) of the current zoning regulations as a nonconforming lot because: (1) although, Lot 1, without parcel A, has not yet been developed, it is part of an approved, three-lot subdivision; (2) Lot 1, without parcel A, complies with the 1969 zoning regulations, more specifically, the minimum lot width requirement; and (3) there is no evidence in the record that Lot 1 merged with a lot having a continuance frontage prior to the enactment of the current zoning regulations.[5]
 VI. CONCLUSION
Based upon the foregoing analysis, this court finds that Nicholas' appeal should be sustained. This court finds that the ZBA's decision to deny Nicholas' appeal was not based on substantial evidence in the record, and, therefore, the ZBA acted arbitrarily, illegally, capriciously and in abuse of its discretion. Accordingly, Nicholas' appeal is hereby sustained.
HICKEY, J.