STATE OF CONNECTICUT *v.* ABOKOR GURREH
(AC 19846)

Schaller, Spear and Hennessy, Js.

Argued June, 2—officially released October 3, 2000

*Brian J. Woolf*, with whom was *Douglas K. Lindbergh*, for the appellant (defendant).

*Joy K. Fausey*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *David L. Zagaja*, assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Abokor Gurreh, appeals from the judgments of conviction, rendered after conditional pleas of nolo contendere, of sale of a controlled substance in violation of General Statutes § 21a-277 (b)[1] and attempt to possess a controlled sub-

---

[1] General Statutes § 21a-277 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with intent to sell or dispense, offers, gives or administers to another person any controlled substance, except a narcotic substance, or a hallucinogenic substance other than marijuana, except as authorized in this chapter, may, for the first offense, be fined not more than twenty-five thousand dollars or be imprisoned not more than seven years

stance with intent to sell in violation of General Statutes §§ 53a-49[2] and 21a-277 (b). The defendant claims that the trial court improperly (1) concluded that § 21a-277 (b) prohibited the possession of khat,[3] a plant material that contains the prohibited controlled substances cathinone and cathine, and (2) concluded that he was afforded constitutionally adequate notice that § 21a-277 (b) prohibits the possession with intent to sell and or the sale of khat, notwithstanding the fact that § 21a-243-7 of the Regulations of Connecticut State Agencies does not list khat as a controlled substance and only its chemical constituents, cathinone and cathine, are listed as such. We affirm the judgments of the trial court.

The following facts are necessary for a resolution of this appeal. The state and the defendant, during oral argument before the trial court, stipulated to the facts contained in the arrest documents. In its articulation, the trial court summarized those facts as follows: "Members of the Hartford police department were alerted by an employee of Choice Courier, a courier service, that Choice Courier was in possession of a suspicious package that may contain a controlled substance. The package was addressed to one Far Lyon, 1000 Capitol Avenue, Apt. B-1, Hartford, Conn. Police investigation

or be both fined and imprisoned; and, for each subsequent offense, may be fined not more than one hundred thousand dollars or be imprisoned not more than fifteen years, or be both fined and imprisoned."

[2] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[3] Merriam-Webster's Collegiate Dictionary (10th Ed. 1995), defines khat as "a shrub (Catha edulis) cultivated in the Middle East and Africa for its leaves and buds that are the source of an habituating stimulant when chewed or used as a tea."

led to the discovery that the package contained 31 pounds of leaves from the *Catha edulis* plant, known by the police officers to have the street name khat, and, further, that the leaves of this plant were classified as a controlled substance within the state of Connecticut. Additional information received as a result of the investigation revealed that 24 prior deliveries of similar packages had been made by Choice Courier . . . . Police subsequently delivered the package to the defendant, Abokor Gurreh, who falsely identified himself as the addressee, Far Lyon. The defendant was then charged with violations of § 21a-279 [b] and § 21a-277 (b). On March 26, 1999, Choice Courier alerted Hartford Police of yet another package addressed to Far lyon, 1000 Capitol Avenue, Apt. B-1, Hartford, Conn. This package was intercepted and found to contain 40 pounds of *Catha edulis* plant or khat and the defendant was charged by warrant with violations of the same statutes referenced in the prior incident. The defendant then moved to dismiss the information for both incidents as violative of the defendant's state and federal constitutional right to due process." The defendant's motion to dismiss was denied.

I

The defendant first claims that the legislature should not be deemed to have prohibited the possession with intent to sell, or the attempt to possess with intent to sell, the plant khat because the plant is not listed as a controlled substance in the regulations and only its chemical constituents, cathinone and cathine, are listed as such. Specifically, the defendant claims that we must decide (1) whether the legislature intended to prohibit the possession of the chemicals cathinone and cathine or the possession of all plants that may contain molecules of such chemicals and (2) that, as a matter of statutory construction, khat is not a controlled substance within the meaning of § 21a-277 (b).

We start with our standard of review. "In construing regulations, the general rules of statutory construction apply. *Smith* v. *Zoning Board of Appeals*, 227 Conn. 71, 89, 629 A.2d 1089 (1993), cert. denied, 510 U.S. 1164, 114 S. Ct. 1190, 127 L. Ed. 2d 540 (1994). Statutory construction is a question of law requiring plenary review. See *Lopiano* v. *Lopiano*, 247 Conn. 356, 363, 752 A.2d 1000 (1998), citing *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." (Internal quotation marks omitted.) *Hayward* v. *Hayward*, 53 Conn. App. 1, 7, 752 A.2d 1087 (1999).

## A

The defendant points out that the regulations, in several instances, individually list both the names of the plants that are considered prohibited controlled substances and the chemical constituents that those plants contain,[4] and, therefore, because khat is not listed, it was not intended to be prohibited. Furthermore, the defendant points to several controlled substances that may be derived from plant or animal sources the possession of which, like khat, he claims, is "obviously" not intended to be prohibited.[5] We disagree.

---

[4] The defendant makes the following assertions regarding the listing of controlled substances including plants and their chemical counterparts. "Not only is 'tetrahydrocannabinols' listed, but 'marijuana' from which it is derived is also listed by name. Not only is 'psilocin' listed, but the psilocybin mushroom from which it is derived is also listed. Not only is 'mescaline' listed, but the 'peyote cactus' from which it is derived is also listed. Not only is 'opium' listed, but 'opium poppy' and 'poppy straw' and 'concentrate of poppy straw' are listed. Not only is cocaine prohibited, but 'coca leaves' are also specifically prohibited."

[5] The defendant asserts that while lysergic acid (LSD) is a controlled substance, rye grass can contain a fungus from which LSD may be derived and it is not listed as a controlled substance. LSD may also be derived from the seeds of the common morning glory plant, yet those seeds are not listed as a controlled substance. Furthermore, he asserts that poppy seeds contain "molecules of opium," yet they are not listed as a controlled substance. He also lists testosterone, which may be found naturally in animals and humans. Finally, he points out that belladonna alkaloids are controlled substances, but may be found in jimpson weed, which grows wild in hog pens.

"When interpreting statutes, we rely on well established principles of statutory construction. [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . It is axiomatic, however, that when the statutory language is clear and unambiguous, construction of the statute by reference to its history and purpose is unnecessary." (Citation omitted; internal quotation marks omitted.) *Boris* v. *Garbo Lobster Co.*, 58 Conn. App. 29, 36, 750 A.2d 1152, cert. denied, 254 Conn. 910, 759 A.2d 504 (2000).

"The purpose of statutory construction is to give effect to the intended purpose of the legislature. . . . If the language of a statute is plain and unambiguous, we need look no further than the words actually used because we assume that the language expresses the legislature's intent." (Citations omitted; internal quotation marks omitted.) *State* v. *DeFrancesco*, 235 Conn. 426, 435, 668 A.2d 348 (1995).

The defendant's first argument is that khat is not a controlled substance because it is not specifically enumerated in the relevant statutes or regulations like other plant or plant derived controlled substances such as marijuana and tetrahydrocannabinols. Our Supreme Court has stated that "[u]nless there is evidence to the contrary, statutory itemization indicates that the legislature intended the list to be exclusive." (Internal quotation marks omitted.) *State* v. *Kish*, 186 Conn. 757, 766, 443 A.2d 1274 (1982). Here, however, our legislature has clearly, by its language, indicated an intent to include materials that contain controlled substances.

Reviewing the relevant language of the statutes and regulations under which the defendant was charged, we find the wording to be plain and unambiguous. First, the statute under which the defendant was charged, General Statutes § 21a-277 (b), provides in relevant part: "Any person who . . . possesses with intent to sell or dispense . . . any controlled substance,[6] except a narcotic substance, or a hallucinogenic substance other than marijuana, except as authorized in this chapter, may, for the first offense, be fined not more than twenty-five thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned . . . ." We find no ambiguity in this language, nor does the defendant point to any.

The language contained in § 21a-243-7 (e) of the Regulations of Connecticut State Agencies provides in relevant part that a controlled substance is "*any* material, compound, mixture or preparation which contains *any* quantity of the following substances having a stimulant effect on the central nervous system . . . (3) Cathinone . . . ." (Emphasis added.) Clearly, the language "any material" is intended to include those materials that are not specifically listed, but that contain the controlled substances subsequently listed, in this case, cathinone. The language of § 21a-243-10 (b) of the Regulations of Connecticut State Agencies, which applies to cathine, is nearly identical and, therefore, would operate similarly.

Finally, while the defendant suggests that rye grass, morning glory seeds and poppy seeds may contain molecules of controlled substances, those materials do not "have a tendency to promote abuse or . . . psychological dependence or both," as required by General Stat-

---

[6] General Statutes § 21a-240 (9) provides: " 'Controlled substance' means a drug, substance, or immediate precursor in schedules I to V, inclusive, of the Connecticut controlled substance scheduling regulations adopted pursuant to section 21a-243."

utes § 21a-243 (c). Furthermore, "[i]t is well established that an appellate court should not 'enlarge the proper scope of [its] appellate review either by finding facts or by drawing inferences from the facts actually found.' *Mazzone* v. *Connecticut Transit Co.*, 240 Conn. 788, 797, 694 A.2d 1230 (1997)." *Parker* v. *Shaker Real Estate, Inc.*, 47 Conn. App. 489, 498, 705 A.2d 210 (1998). Because we are not charged with the task of finding facts, we are limited to the record before us. There was no expert testimony before the trial court for our review that might illuminate the assertions made in the defendant's brief. We conclude, therefore, that the legislature intended to prohibit the possession or sale of khat.

B

The defendant also claims that, as a matter of statutory construction, §§ 21a-243-7 (e) (3)[7] and 21a-243-10 (b) (1)[8] of the Regulations of Connecticut State Agencies do not satisfy the requirements of General Statutes § 21a-243 (c).[9] Therefore, the defendant claims that khat

[7] Section 21a-243-7 of the Regulations of Connecticut State Agencies provides in relevant part: "The controlled substances listed in this regulation are included by whatever official, common, usual, chemical, or trade name designation in Schedule I . . . (e) Unless specifically excepted or unless listed in another schedule, any material, compound, mixture or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system, including its salts, isomers, and salts of isomers . . . (3) Cathinone . . . ."

[8] Section 21a-243-10 of the Regulations of Connecticut State Agencies provides in relevant part: "The controlled substances listed in this regulation are included by whatever official, common, usual, chemical, or trade name designation in Schedule IV . . . (b) Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system, including its salts, isomers, and salts of such isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation: (1) Cathine . . . ."

[9] General Statutes § 21a-243 (c) provides in relevant part: "The Commissioner of Consumer Protection acting upon the advice of the Commission of Pharmacy, may by regulation designate, after investigation, as a controlled substance, a substance or chemical composition containing any quantity of

cannot, as a matter of law, be deemed a controlled substance. The defendant essentially argues that the regulations do not specifically "designate" khat as a controlled substance as mandated by § 21a-243 (c), and, therefore, cathine and cathinone, the two substances found in khat and listed in the regulations, are not themselves "controlled substances" within the meaning of § 21a-243 (c) and the regulations. We do not agree with the defendant's tortured reading of the statute and relevant regulations.

The plain language of § 21a-243 (c) provides that the commissioner of consumer protection (commissioner) may designate "as a *controlled* substance a substance or chemical composition containing any quantity of a substance," in this case, cathinone and cathine. (Emphasis added.) This clause allows for the designation of chemical compositions containing controlled substances, "which [have] been found to have a stimulant . . . effect upon the higher functions of the central nervous system and [which have] a tendency to promote abuse or physiological or psychological dependance or both." More generally, this clause gives the commissioner the power to designate as *"controlled* substances," substances or compositions of substances found to have a stimulant effect upon the central nervous system. In this case, the commissioner found the substances cathinone and cathine to have met this requirement.

Next, § 21a-243-7 (e) of the Regulations of Connecticut State Agencies provides that a controlled substance

a substance which has been found to have a stimulant . . . effect upon the higher functions of the central nervous system and having a tendency to promote abuse or physiological or psychological dependence or both. Such substances are classifiable as amphetamine-type, barbiturate-type, cannabis-type, cocaine-type, hallucinogenic, morphine-type and other stimulant and depressant substances, and specifically exclude alcohol, caffeine and nicotine. Substances which are designated as controlled substances shall be classified in schedules I to V by regulations adopted pursuant to subsection (a) of this section."

is "*any* material . . . which contains *any* quantity of [cathinone] having a stimulant effect on the central nervous system . . . ." (Emphasis added.) Clearly, khat is a material that contains a quantity, however small, of cathinone, and is, in fact, used for its stimulant effect. We find no ambiguity in the construction of this regulation

Additionally, § 21a-243-10 (b) of the Regulations of Connecticut State Agencies provides that a controlled substance is "any material . . . which contains any quantity of [cathine] having a stimulant effect on the central nervous system . . . ." Under this definition, khat is clearly a material that contains a quantity, however small, of cathine, and is, in fact, used for its stimulant effect. Again, we find that no ambiguity exists. We therefore conclude that, as a matter of statutory construction, khat may be deemed a controlled substance by virtue of its containing the controlled substances cathinone and cathine.

## II

The defendant next claims that the court improperly concluded that he was afforded constitutionally adequate notice that § 21a-277 (b) prohibits the possession with intent to sell and the sale of khat, notwithstanding the fact that even though the regulations list the prohibited substances cathinone and cathine, which are found in khat, they do not list khat as a controlled substance. He claims that the statute fails to define the offense with sufficient definiteness to enable ordinary people to understand what conduct is prohibited and, therefore, violates the due process clause of the fourteenth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut. We disagree.

Our Supreme court has opined that "[i]n our assessment of whether the statute passes constitutional muster, we proceed from the well recognized

jurisprudential principle that [t]he party attacking a validly enacted statute . . . bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt and we indulge in every presumption in favor of the statute's constitutionality. . . . The constitutional injunction that is commonly referred to as the void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement. . . . Thus, [i]n order to surmount a vagueness challenge, a statute [must] afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited. . . .

"Furthermore, [a]s a general rule, the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue. . . . For statutes that do not implicate the especially sensitive concerns embodied in the first amendment [or other fundamental rights], we determine the constitutionality of a statute under attack for vagueness by considering its applicability to the particular facts at issue. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." (Citations omitted; internal quotation marks omitted.) *State* v. *Payne*, 240 Conn. 766, 777–78, 695 A.2d 525 (1997).

We must now review the facts and circumstances in the present case to determine whether a person of ordinary intelligence would understand that the defendant's acts were prohibited under § 21a-277 (b). We conclude that a person of ordinary intelligence would

know that possession of khat would be in violation of the statute. We first point to our discussion in part I of this opinion, which holds that the statute and relevant regulations are not ambiguous.

The defendant contends that cathinone and cathine are relatively new words, which makes it difficult for him to define them to determine whether khat is a controlled substance. This argument is flawed. First, an ordinary person concerned with determining the legality of a substance he wants to possess might simply start with ascertaining the definition of the substance in a dictionary. A review of the dictionary definition of khat; see footnote 3; reveals that khat is a "habituating stimulant." This alone would, at the very least, give notice to an ordinary person of the general nature of the material. Furthermore, in this case, the defendant, a native of Somalia, was already aware of the stimulant characteristic of the substance because of its widespread use in that country. Finally, the defendant's use of an assumed name to accept the very large packages of khat indicated consciousness of guilt. See *State* v. *Edwards*, 201 Conn. 125, 152–53, 513 A.2d 669 (1986).

The defendant therefore cannot claim that he was denied adequate notice and fair warning that possession of khat is prohibited because it contains cathine and cathinone. The defendant has not met his heavy burden of proving that § 21a-277 (b) is unconstitutional beyond a reasonable doubt.

The judgments are affirmed.

In this opinion the other judges concurred.