**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Abdirisak MOHAMUD, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 23, 2010.

Filed Dec. 6, 2010.

Leland C. Clark, Butler, for appellant.

Richard A. Goldfinger, Assistant District Attorney, Benjamin A. Simon, Assistant District Attorney, Butler, for Commonwealth, appellee.

BEFORE: MUSMANNO, DONOHUE and OTT, JJ.

OPINION BY DONOHUE, J.:

Appellant, Abdirisak Mohamud ("Mohamud"), appeals from the trial court's January 14, 2010 sentence imposing 246 to 492 days of imprisonment, followed by two years of probation for possession with intent to deliver a controlled substance.[1] Mohamud challenges Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act ("the Act"),[2] 35 P.S. § 780–101—

---

**1.** 35 Pa.S.A. §§ 780–113(a)(30).

**2.** Throughout this opinion, our references to the Act include both the statute and regula-

§ 780–141, as violative of the Due Process Clause of the Fourteenth Amendment to the United States Constitution for lack of fair warning of the proscribed conduct for which he was convicted. After careful analysis, we affirm the judgment of sentence.

The trial court recited the following facts in its Pa.R.A.P. 1925(a) opinion:

> On the morning of April 16, 2009, Detective Robert O'Neill, of the Cranberry Township Police Department, received information [...] that a UPS Store in Cranberry Township had received suspicious packages. At around 12:30 P.M., Detective O'Neill arrived at the UPS Store and spoke with the employees there who explained the situation and stated that someone with a broken accent had called and indicated that he was going to pick up the packages. Approximately four hours later, the defendant arrived at the UPS Store in a white cargo van, circled around the plaza in which the store was located, and parked directly in front of the UPS Store. Detective O'Neill testified that the van had Ohio plates and that the defendant was looking around suspiciously. After observing the defendant enter and later exit the UPS Store, Detective O'Neill received a call from the manager of the UPS Store during which he indicated that the suspicious packages had been picked up. Detective O'Neill observed the defendant open the back of his van and place the boxes inside.
>
> Detective O'Neill observed the defendant talking on a cell phone in an unrecognized foreign language. He then approached the defendant, who was nervous, and began a conversation with him. When asked about what was contained in the packages, the defendant initially declined to answer. The defendant agreed to accompany Detective O'Neill to the police station. Once there the defendant was given and waived his *Miranda* [3] rights. The defendant acknowledged that the packages contained [the plant catha edulis]. Detective O'Neill obtained the defendant's permission to open the packages and upon doing so discovered that the packages did in fact contain khat. During the interview, the defendant admitted that he knew the packages contained an illegal substance and admitted to having an intention to deliver the khat to another individual.
>
> The khat was sent to the crime lab in Greensburg where it was tested by Lisa Moore, an expert in forensic science, drug identification, and drug analysis. Upon analyzing the substance using a gas chromatograph-mass spectrometer, Ms. Moore concluded that the khat contained cathinone, a Schedule I controlled substance.

Trial Court Opinion, 3/16/10, at 2–3.

Based on these facts, which are not in dispute, the trial court, sitting as factfinder, found Mohamud guilty of possession with intent to deliver a controlled substance. This timely appeal followed. Mohamud raises three issues which we have reordered for clarity of analysis:

> I. Whether 28 Pa.Code § 25.72(b)(6)(xxvi), which prohibits the illegal possession with intent to deliver any "material, compound, mixture, or

---

tions enacted pursuant thereto. The statutory version of Schedule I is published at 35 P.S. § 780–104(1). Section 780–103(a) of the Act permits the Commonwealth's Secretary of Health to add drugs to the various schedules by regulation, as was done with cathinone.

**3.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

preparation" containing cathinone, includes catha edulis?

II. Whether prosecution of a person for catha edulis under a regulation prohibiting possession of a material, compound, mixture or preparation which contains any quantity of ... cathinone" violates the Fair Warning requirements of the Due Process Clause of the Fourteenth Amendment?

II. Whether there was sufficient evidence to convict the defendant of possession with intent to deliver a schedule I controlled substance wherein the alleged schedule I controlled substance was the plant catha edulis, commonly known as "khat"?

Mohamud's Brief at 8.

■ Mohamud's issues present a question of first impression in Pennsylvania: whether a provision in the Act, prohibiting unauthorized possession of material containing cathinone applies to possession of the plant catha edulis (commonly known as "khat"), in which cathinone naturally occurs. The Act does not list catha edulis or khat as a controlled substance. In point of fact, Mohamud admits that he knew khat is illegal. While our analysis will end there, it cannot begin there, as we must first ascertain whether the Act as applied to Mohamud passes muster as a matter of Constitutional law. *See United States v. Hussein*, 351 F.3d 9, 15 (1st Cir.2003) (Noting that the defendant's Due Process argument amounted to an assertion that he "could not have known, *as a matter of law,* that khat was a controlled substance" and that the defendant's knowledge, as a matter of fact, of khat's illegality, was rele-

vant to the defendant's challenge to the sufficiency of the evidence.) (emphasis in original).

Cathinone is a Schedule I controlled substance. 28 Pa.Code § 25.72(b)(6)(xxvi). Khat[4] is a plant grown in the horn of Africa and the Arabian Peninsula. *Id.* at 11. "For centuries, persons in East African and Arabian Peninsular countries such as Somalia, Kenya, and Yemen have chewed or made tea from the stems of the native khat shrub, which is known to have stimulant properties. Khat is often consumed in social settings, and [...] is legal in many parts of East Africa, the Middle East, and Europe[.]" *United States v. Caseer*, 399 F.3d 828, 830 (6th Cir.2005). "When first cut, [khat] leaves contain the chemical stimulant cathinone, which over time degrades into the milder stimulant cathine.[[5]]" *Hussein*, 351 F.3d at 11. Chewing of khat containing cathinone results in "hyperalertness, hyperactivity, and elevated respiration and heart rate." *State v. Ali*, 613 N.W.2d 796, 797 (Minn.Ct. App.2000).

Mohamud's statutory construction and Due Process arguments are interrelated. We will therefore consider them together. Mohamud asserts that the trial court erred in interpreting 28 Pa.Code § 25.72(b)(6)(xxvi) to prohibit possession of khat because khat is not expressly mentioned anywhere in the Code.[6] Thus, Mohamud argues that § 25.72(b)(6)(xxvi) violates Due Process in that he did not have fair warning that his conduct was illegal. Since Mohamud presents us with questions of law, our standard of review is *de novo* and our scope of review is plenary. *Com-*

---

4. Khat is pronounced "cot." *State v. Samatar,* 2004 Ohio 2641, at ¶ 5 (Ohio Ct.App. 2004).

5. Cathine is a Schedule IV controlled substance. 28 Pa.Code § 25.72(e)(3)(vii).

6. Mohamud bases his constitutional argument entirely on federal law, and we will limit our analysis accordingly.

*monwealth v. Ludwig*, 583 Pa. 6, 15 n. 5, 874 A.2d 623, 628 n. 5 (2005).

Due process mandates that a criminal statute not be vague:

A statute is vague if it fails to give people of ordinary intelligence fair notice as to what conduct is forbidden, or if they cannot gauge their future, contemplated conduct, or if it encourages arbitrary or discriminatory enforcement. A vague law is one whose terms necessarily require people to guess at its meaning. If a law is deficient—vague—in any of these ways, then it violates due process and is constitutionally void.

By contrast, to be valid, a penal statute must set forth a crime with sufficient definiteness that an ordinary person can understand and predict what conduct is prohibited. The law must provide reasonable standards which people can use to gauge the legality of their contemplated, future behavior.

At the same time, however, the void for vagueness doctrine does not mean that statutes must detail criminal conduct with utter precision. Condemned to the use of words, we can never expect mathematical certainty from our language. Indeed, due process and the void for vagueness doctrine are not intended to elevate the practical difficulties of drafting legislation into a constitutional dilemma. Rather, these doctrines are rooted in a rough idea of fairness. As such, statutes may be general enough to embrace a range of human conduct as long as they speak fair warning about what behavior is unlawful. Such statutes do not run afoul of due process of law.

Finally, when evaluating challenges to a statute—whether those challenges are based on vagueness ... or any other considerations—we must also keep in mind that there is a strong presumption that legislation is constitutional. A party challenging legislation bears a heavy burden to prove otherwise. Accordingly, this Court will strike the statute in question only if [the challenger] convinces us that it clearly, palpably and plainly violates the federal or state constitutions.

*Commonwealth v. Baxter*, 956 A.2d 465, 468–469 (Pa.Super.2008) (*en banc*) (internal citations and quotation marks omitted), appeal denied, 600 Pa. 773, 968 A.2d 1280 (2009). Courts are obligated to avoid constitutional difficulties and construe statutes in a constitutional manner if possible. *Ludwig*, 583 Pa. at 15, 874 A.2d at 628.

"Vague laws are subject to particular scrutiny when criminal sanctions are threatened or constitutional rights are at risk." *Caseer*, 399 F.3d at 835. "Vagueness may invalidate a criminal statute if it either (1) fails to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits or (2) authorizes or encourages arbitrary and discriminatory enforcement." *Id.* at 836 (internal quotation marks omitted). While it is vitally important for citizens to understand what conduct is prohibited, we also must be mindful that "ignorance of the law is no defense." *Id.* at 835. Nonetheless, "the general rule that citizens are presumed to know requirements of the law ... is not absolute, and may be abrogated when a law is so technical or obscure that it threatens to ensnare individuals engaged in apparently innocent conduct." *Id.* at 837.

In addition we are mindful of our Statutory Construction Act, found at 1 Pa. C.S.A. § 1901, *et. seq.* Our task in construing a statute is "to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a). "Every statute shall be construed, if possible, to

give effect to all its provisions." *Id.* "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *City of Philadelphia v. Int'l Ass'n of Firefighters, Local 22,* 606 Pa. 447, 465, 999 A.2d 555, 566 (2010) (quoting 1 Pa.C.S.A. § 1921(b).) [7]

We now turn our attention to the applicable regulatory language:

§ 25.72. Schedules of controlled substances

(a) *General.* In accordance with sections 3 and 4 of the act (35 P.S. §§ 780–103 and 780–104), this section lists all controlled substances. Section 4 of the act (35 P.S. § 780–104) designates specific substances for inclusion under the five schedules. The substances listed in this section include those listed by section 4 of the act (35 P.S. § 780–104) and those that have been added by the Secretary after consultation with the Drug, Device and Cosmetic Board.

(b) *Schedule I.* In determining that a substance comes within this schedule, the Secretary will find: a high potential for abuse; no currently accepted medical use in the United States; and a lack of accepted safety for use under medical supervision. The following controlled substances are included in this schedule:

\* \* \*

(6) Unless specifically excepted or unless listed in another schedule, a material, compound, mixture or preparation which contains any quantity of the following substances including the salts, isomers and salts of isomers:

\* \* \*

(xxvi) Cathinone.

28 Pa.Code § 25.72(b)(6)(xxvi).

We believe the language of § 25.72(b)(6)(xxvi), as quoted above, is indeed clear and free of all ambiguity, in accordance with 1 Pa.C.S.A. § 1921(b). Section 25.72(b)(6)(xxvi) states plainly that "a material ... which contains ... cathinone" is a controlled substance. We can conceive of no purpose for the words "a material ... which contains" other than to establish that unlisted materials, when they contain a listed substance, are controlled substances. *See Hussein,* 351 F.3d at 15 ("To the extent that statutory ambiguity is the linchpin of a fair warning challenge, this case does not fit the mold. [ ... ] The language makes it perfectly clear that the charged conduct—possession of a material containing cathinone—is forbidden."); [8] *see also State v. Gurreh,* 60 Conn.App. 166, 758 A.2d 877, 881 (2000) ("Here, however, our legislature has clearly, by its language, indicated an intent to include materials that contain controlled substances."). In summary, we have no doubt that a person of ordinary intelligence could read § 25.72(b)(6)(xxvi) and understand that possession of material containing cathinone is unlawful.

That conclusion does not end our analysis, however, as Mohamud argues that § 25.72(b)(6)(xxvi) is unconstitutionally vague as applied in this case because there is no reason to believe that a person of

7. We note that Pennsylvania courts rely on the Statutory Construction Act to interpret regulations set forth in the Pennsylvania Code. *See D.E.R. v. Locust Point Quarries, Inc.,* 483 Pa. 350, 355–56, 396 A.2d 1205, 1208 (1979).

8. The language § 25.72(b)(6)(xxvi) is substantially the same as its federal counterpart, found at 21 C.F.R. § 1308.11(f)(3), except that the federal regulation reads "any material" rather than "a material." In light of the substantial similarity between the federal and Pennsylvania regulations, we will rely on federal jurisprudence as persuasive authority.

ordinary intelligence would know that khat is a material containing cathinone. Mohamud further posits that persons of ordinary intelligence cannot reasonably be charged with knowledge of the chemical composition of plants in their possession.

Further complicating matters in this case, as Mohamud notes, is that the Act in many cases expressly includes both the active chemical agent and its plant of origin. For example, tetrahydrocannabinols ("THC")[9] and marijuana,[10] heroin[11] and opium poppies,[12] cocaine[13] and coca leaves,[14] and mescaline[15] and peyote[16] appear in the list of controlled substances.[17] Thus, according to Mohamud, the Act does not put a person of ordinary intelligence on notice that khat is illegal.[18]

Several federal courts have addressed this issue. In *Hussein,* the First Circuit noted that the pattern of including both the active ingredient and its plant of origin does not hold throughout the federal controlled substances act. *Hussein,* 351 F.3d at 16. For example, the federal act prohibits psilocybin and psilocin but not the mushroom plant in which those chemicals are found. *Id.* For that reason, the First Circuit concluded that "[t]he alleged pattern is, at best, irregular. [ . . . ] It is simply too much of a stretch to assume, on this basis of this limited pattern, that a person of ordinary intelligence would jump to the conclusion that, despite the clear prohibition on 'material containing cathinone,' khat containing cathinone is excluded from coverage." *Id.*[19]

**9.** 35 P.S. § 780–104(1)(iii)(16) (Schedule I).

**10.** 35 P.S. § 780–104(1)(iv) (Schedule I).

**11.** 35 P.S. § 780–104(1)(ii)(10) (Schedule I).

**12.** 35 P.S. § 780–104(2)(i)(3) (Schedule II).

**13.** 35 Pa.S.A. § 780–104(2)(i)(4) (Schedule II).

**14.** 35 Pa.S.A. § 780–104(2)(i)(4) (Schedule II).

**15.** 35 P.S. § 780–104(1)(iii)(10) (Schedule I).

**16.** 35 P.S. § 780–104(1)(iii)(11) (Schedule I).

**17.** No evidence of record establishes that THC, heroin, cocaine, and mescaline are active ingredients found in, respectively, marijuana, opium poppies, coca leaves, and peyote, but these facts are widely accepted in published opinions addressing similar arguments. *See, e.g., Hussein,* 351 F.3d at 16; *Caseer,* 399 F.3d at 833.

**18.** In *Commonwealth v. Herman,* 288 Pa.Super. 219, 431 A.2d 1016, 1019 (1981), the defendant argued that the Commonwealth failed to prove that the type of marijuana in his possession was the type prohibited by law. We addressed the argument as follows:

Marijuana is a Schedule I drug under [the Act]. It is defined to consist of "all forms, species and/or varieties of the genus Cannabis sativa L." The term marijuana is of Mexican origin referring to the flowering tops and dried leaves of the hemp plant. However, because of the difference in soil content and climate, the plant develops different physical characteristics in various parts of the world. Thus, Cannabis indicia is the name given to Cannabis sativa L. grown in India, whereas Cannabis americana is the name given to marijuana which is yielded by the Cannabis sativa L. plant cultivated in this country. From the statutory definition of marijuana quoted above, it is apparent that the legislature intended to embrace all species of the genus Cannabis sativa L. as forms of marijuana prohibited by the Act.

*Id.* at 1019–20.

**19.** Similarly, the Pennsylvania Act prohibits psilocybin and psilocin but does not expressly reference any kind of mushroom. *See,* 35 P.S. § 780–104(1)(iii)(14–15). Our research reveals that the Act has been enforced against persons in possession of mushrooms containing psilocin. *D.O.T. v. Perruso,* 160 Pa. Cmwlth. 49, 634 A.2d 692, 693 (1993)(addressing the driver's license suspension of an individual convicted pursuant to 780–113(a)(16) of possession of mushrooms containing psilocin), *appeal denied,* 538 Pa. 650, 647 A.2d 904 (1994). We have found no

The Second Circuit offered a slightly different analysis of this problem:

> [W]e are sympathetic to Hassan's argument because the statutory scheme, as it relates to khat, is troubling. Here, rather than including the words "khat" or "catha edulis" in the applicable regulations, the regulatory scheme references only khat's key chemical ingredients, cathine and cathinone. In contrast to the regulatory treatment of khat, Congress did list four botanical sources—cannabis, coca, peyote, and poppy—in the CSA in addition to their chemical ingredients. We agree with Hassan, and the district court, that it would be helpful to people, who actually resort to statutes and regulations to determine whether their conduct is lawful, for Congress, through the statutory or regulatory scheme, to include the word "khat" in the CSA.

*United States v. Hassan*, 578 F.3d 108, 121 (2d Cir.2008).[20]

To summarize the foregoing, the omission of khat/catha edulis from the schedule of controlled substances, despite inclusion of several of its chemical components, poses a unique fair-warning issue. The Sixth Circuit in *Caseer* summarized the predicament:

> The case at bar differs from most fair-warning cases in that the criminal provision at issue here is not ambiguous in the traditional sense. Neither party has challenged the fact that 21 C.F.R. § 1308.11(f)(3) on its face explicitly establishes cathinone as a Schedule I con-

trolled substance. Rather, the asserted constitutional defect of this provision is that through the definition of prohibited conduct by the use of an obscure scientific term, i.e., "cathinone," persons of ordinary intelligence, even after reading the statutory text, would be unaware that khat is a controlled substance. In other words, the controlled substances schedule's vagueness derives not from the language's imprecision but rather from the schedule essentially being written in a language foreign to persons of ordinary intelligence. When a statute is precise on its face yet latently vague, the danger of persons being caught unaware of the criminality of their conduct is high.

*Caseer*, 399 F.3d at 836.

In *Caseer*, the defendant faced charges of conspiracy to import cathinone, importing cathinone, and aiding and abetting in the importation of cathinone.[21] In deciding the case, the court noted that "when we evaluate a provision, like the one at issue here, that regulates the conduct of the public at large and not a particular industry or subgroup, we do not impute specialized knowledge to the 'person of ordinary intelligence' by whom we judge the statute's vagueness." *Id.* at 837. Noting that mainstream dictionaries contained no entry for cathinone and did not reference any chemical in defining khat, the Court concluded that "the term 'cathinone' is sufficiently obscure that persons of ordinary intelligence reading the controlled substances schedules probably would not

Pennsylvania case analyzing the constitutional ramifications of a prosecution for possession of hallucinogenic mushrooms with intent to distribute.

**20.** We echo the Second Circuit's statement that the statutory scheme, as it applies to khat, is troubling. Despite our ultimate resolution of this case, we believe our controlled

substance schedules would benefit from clarification—either from the General Assembly or the Commonwealth Secretary of Health—as concerns their application to khat, hallucinogenic mushrooms, and any other substance for which a similar issue could arise.

**21.** *See* 21 U.S.C.A. §§ 952, 963; 18 U.S.C.A. § 2.

discern that possession of khat containing cathinone and/or cathine constitutes possession of a controlled substance." *Id.* at 838.

Nonetheless, courts considering this issue commonly conclude that the law is constitutional as applied to khat because the underlying offenses require the prosecution to establish *mens rea* as to each element. In *Caseer*, for example, the defendant could be convicted only if he "knowingly and intentionally" imported a controlled substance. *Id.* at 839, (citing § 21 U.S.C.A. § 960(a)(1)). Since the prosecution, pursuant to federal law, must prove that a defendant knows that the khat he is importing is a controlled substance, the omission of khat from the schedule of controlled substances does not result in a lack of fair warning. *Id.*[22]

Other federal and state courts have reached similar conclusions in khat prosecutions. *See Hussein*, 351 F.3d at 12–16 (rejecting the defendant's fair warning argument as to khat because the underlying offense required that a defending "knowingly or intentionally" possess a controlled substance with intent to distribute); *United States v. Abdulle*, 564 F.3d 119, 125–26 (2nd Cir. 2009) (same); *Hassan*, 578 F.3d 108, 119–22 (same); *United States v. Sheikh*, 367 F.3d 756, 764 (8th Cir.2004) (same); *see also Ali*, 613 N.W.2d 796; *Gurreh*, 60 Conn.App. 166, 758 A.2d 877; *State v. Atley*, 564 N.W.2d 817 (Iowa 1997) (state law constitutional as applied to hallucinogenic mushrooms); *Commonwealth v. Siad*, 42 Va. Cir. 95 (Va.Cir.Ct.1997); *but see Fiske v. State*, 366 So.2d 423 (Fla. 1978) (state law unconstitutional as applied

to hallucinogenic mushrooms). In a different context, our Supreme Court has held that "vagueness challenges fail when a statute has a specific intent requirement because a defendant cannot complaint that he did not understand the crime where he has been found to have had the specific intent of doing what is prohibited." *Commonwealth v. Hendrickson*, 555 Pa. 277, 284, 724 A.2d 315, 319 (1999).

With that background, we turn our attention to Mohamud's conviction for possession with intent to deliver pursuant to 35 P.S. § 780–113(a)(30). The Act provides in relevant part as follows:

§ 780–113. Prohibited acts; penalties

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

\* \* \*

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780–113(a)(30).

Section 780–113(a)(30) defines the crime of possession with intent to deliver as applied to controlled substances and counterfeit controlled substances.[23] The wording of § 780–113(a)(30) is puzzling, inasmuch as it does not expressly require *mens rea* as to the possession element of possession with intent to deliver a controlled sub-

---

**22.** The *Caseer* Court ultimately vacated the conviction, concluding that the record lacked evidence that the defendant was aware that he was importing a controlled substance. *Id.* at 844.

**23.** A counterfeit controlled substance is defined in the Act as a controlled substance that is mislabeled such that falsely purports to the product of a manufacturer other than the manufacturer who created it. 35 P.S. § 780–102.

stance. The counterfeit controlled substances offense, on the other hand, is defined as **"knowingly [. . .] possessing with intent to deliver [. . .]."** By way of contrast, the Act makes no such distinction between controlled substances and counterfeit controlled substances for purposes of the simple possession offense: "[k]nowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act [. . .]." 35 P.S. § 780–113(a)(16). The language of § 780–113(a)(30) also differs from its federal analogue. *See* 21 U.S.C.A. § 841(a)(1)("(a) Unlawful acts. Except as authorized by this title, it shall be unlawful for any person **knowingly or intentionally**—(1) **to** manufacture, distribute, or dispense, or **possess with intent to** manufacture, **distribute,** or dispense, a controlled substance[.]")(emphasis added).[24]

■■ Nonetheless, Pennsylvania courts interpreting § 780–113(a)(30) as it applies to possession with intent to deliver a controlled substance have concluded that the Commonwealth must establish *mens rea* as to the possession element. In *Commonwealth v. Rambo*, 488 Pa. 334, 336–37, 412 A.2d 535, 536–37 (1980), the defendant was the recipient of two packages from Morocco containing hashish. The defendant argued that he was not aware that the packages contained hashish, and our Supreme Court noted that "[s]uch knowledge is required by our statute and our case law in order to prove possession of a controlled substance." *Id.* at 337, 412 A.2d at 537. The Supreme Court relied upon 18 Pa.C.S.A. § 301, which defines possession as "an act, within the meaning of this section, if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate the possession." *Id.* (quoting 18 Pa.C.S.A. § 301(c)).[25] In addition, the court wrote:

> For legal purposes other than criminal law—e.g., the law of finders—one may possess something without knowing of its existence, but possession in a criminal statute is usually construed to mean conscious possession. So construed, knowingly receiving an item or retention after awareness of control over it could be considered a sufficient act or omission to serve as the proper basis for a crime.

*Id.* at 338, 412 A.2d at 537–38 (quoting W. LaFave & A. Scott, Jr., Handbook on Criminal Law § 25, p. 182 (1972)). Since the record in *Rambo* did not reflect that the defendant knew that the packages contained hashish, the Supreme Court vacated the conviction under § 780–113(a)(30). *Id.* at 338–340, 412 A.2d at 537–38 (citing *Commonwealth v. Sterling*, 241 Pa.Super. 411, 361 A.2d 799 (1976)).[26]

---

**24.** We observe that earlier versions of our controlled substance law, enacted in 1917, did not include a *mens rea* requirement for possession and delivery of a narcotic. *See Commonwealth v. Walker*, 226 Pa.Super. 149, 313 A.2d 351, 352–53 (1973); *Commonwealth v. Simpson*, 222 Pa.Super. 296, 294 A.2d 805, 807–08 (1972); *Commonwealth v. Yaple*, 217 Pa.Super. 232, 273 A.2d 346, 351 (1970); *Commonwealth v. Gorodetsky*, 178 Pa.Super. 467, 115 A.2d 760, 764–65 (1955).

**25.** Section 301 is applicable to the Act by virtue of 18 Pa.C.S.A § 107(a). *Id.* at n. 3.

We observe also that 18 Pa.C.S.A. § 302 supplies a *mens rea* requirement for offenses that do not explicitly include one. Section 302 is applicable to the Act by virtue of 18 Pa.C.S.A § 305. Section 305 provides that Section 302 applies to offenses in other titles unless a contrary legislative intent "plainly appears." 18 Pa.C.S.A. § 305(a)(2). The Supreme Court did not address §§ 302 and 305 in *Rambo*.

**26.** We note, however, that in *Commonwealth v. Tarves*, 2007 Pa. D. & C. Lexis 173, at *2 (Bucks Co.2007), the defendant testified that he believed a bag of cocaine he sold was

Likewise, in *Commonwealth v. Valette*, 531 Pa. 384, 387–88, 613 A.2d 548, 549 (1992), the defendant argued that he was not in constructive possession of cocaine recovered from an apartment where he was present. In analyzing whether the defendant's conviction under § 780–113(a)(30) could stand, the Court wrote: "In drug possession cases, the Commonwealth must prove that a defendant had knowing or intentional possession of a controlled substance[.]" *Id.* at 388, 613 A.2d at 549–50.[27]

■■■ The question in the instant matter differs slightly from the question in *Rambo* in that Mohamud admittedly knew that khat was in the UPS package. Mohamud argues that he did not know and could not have known that khat contains cathinone. This Court's opinion in *Commonwealth v. Sweeting*, 364 Pa.Super. 626, 528 A.2d 978 (1987), *appeal denied*, 517 Pa. 606, 536 A.2d 1331 (1987), provides guidance for our analysis of Mohamud's argument. In *Sweeting*, the defendant sold what he believed to be a quantity of methamphetamine to an undercover state trooper. *Id.* at 979. Chemical analysis revealed that the substance actually was meperidine. *Id.* Methamphetamine and meperidine both are controlled substances. *Id.* The

defendant argued that his convictions under § 780–113(a)(16) and (30) had to be overturned because both subsections require knowing possession of a controlled substance and he did not have knowledge "of the precise nature of the controlled substance." *Id.* at 980. In affirming the judgment of sentence, we cited with approval to the following language from the California Court of Appeals:

A person who intends to possess a controlled substance, believes he possesses a controlled substance, and in fact possesses a controlled substance is guilty of [possession of a controlled substance]. The only knowledge that is required to sustain the conviction is knowledge of the controlled nature of the substance. The defendant need not know the chemical name or the precise chemical nature of the substance. Any more stringent rule as to knowledge would, for all practical purposes, make the statute inapplicable to anyone who had not personally performed a [chemical] analysis of the contraband in his possession.

*Id.* (quoting *People v. Garringer*, 48 Cal. App.3d 827, 121 Cal.Rptr. 922 (1975)). Our analysis in *Sweeting* is consistent with the requirements of federal Due Process.

actually a bag of crushed Tums. The trial court recommended affirming the judgment of sentence on several different bases, including that the asserted defense was meaningless because § 780–113(a)(30) does not require *mens rea* as to the possession element of the offense. This Court affirmed without publishing an opinion, and therefore our basis for affirming is unclear. *Commonwealth v. Tarves*, 932 A.2d 263 (Pa.Super.2007). In light of the Supreme Court precedent analyzed in the main text, the *Tarves* trial court's analysis of § 780–113(a)(30) was incorrect.

27. We further observe that Pennsylvania's suggested jury instructions include a Proof of *mens rea* with regard to the possession element under § 780–113(a)(30): "In order for a

person to be convicted of possession of a controlled substance with intent to … [deliver], the following four elements must be proved … *Third*, **that the defendant was aware** of the item's presence and **that the item was in fact the [controlled substance] charged.**" (emphasis added; brackets in original). Pennsylvania Suggested Standard Criminal Jury Instruction 16.01; *see also Commonwealth v. Davis*, 331 Pa.Super. 285, 480 A.2d 1035, 1044 (1984) (holding that the trial court did not err in instructing the jury as to the elements of both simple possession and possession with intent to deliver because the Commonwealth was required to establish the elements of both in order to obtain a conviction under § 780–113(a)(30)).

*See Abdulle,* 564 F.3d at 125–26 ("The cases are legion that a defendant can lawfully be found guilty of having violated [the federal controlled substance act] even if he [or she] did not know the exact nature of the drug that he [or she] possessed as long as he [or she] knew that he [or she] possessed an illegal drug.") (quoting *Hussein,* 351 F.3d at 18).

For all of the foregoing reasons, we conclude that Mohamud's first two arguments do not warrant relief. Since the Commonwealth is required to prove that Mohamud knew that the khat in his possession contained a controlled substance, the Act as applied to Mohamud does not violate Due Process fair warning requirements.

 Lastly, we consider Mohamud's argument that the Commonwealth did not produce sufficient evidence of Mohamud's guilt under § 780–113(a)(30). We conduct our review as follows:

Our well-settled standard of review when evaluating a challenge to the sufficiency of the evidence mandates that we assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict-winner. We must determine whether there is sufficient evidence to enable the fact finder to have found every element of the crime beyond a reasonable doubt.

In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Rodriquez,* 989 A.2d 29, 31 (Pa.Super.2010).

 The sole basis for Mohamud's sufficiency of the evidence argument is that he did not know that khat was a material that contained cathinone, within the meaning of 28 Pa.Code § 25.72(b)(6)(xxvi) so that his conviction under § 780–113(a)(30) cannot stand. As previously noted, the Commonwealth did not need to prove that Mohamud knew why khat was an illegal substance. The Commonwealth only needed to prove that Mohamud knew he was in possession of an illegal substance.

The record reveals that Mohamud, by his own admission, knew that khat was illegal. Commonwealth's Exhibit 2 (audio recording). In addition, Mohamud exhibited surreptitious behavior when he arrived at the UPS store to retrieve the package containing khat. N.T., 11/20/09, at 13–14. Since the record clearly establishes that Mohamud knew he was in possession of an illegal substance, his sufficiency of the evidence argument fails.

In summary, we have concluded that Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act, as applied to Mohamud in this case, does not violate Due Process for lack of fair warning of the proscribed conduct. We have also concluded that the Commonwealth produced sufficient evidence in support of Moha-

mud's conviction. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.