J-S45021-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CHARLES INGRAM | |
| Appellant | No. 1371 EDA 2013 |

Appeal from the Judgment of Sentence of December 6, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0009938-2011

BEFORE:  BOWES, J., WECHT, J., and FITZGERALD, J.[*]

MEMORANDUM BY WECHT, J.:                  **FILED AUGUST 08, 2014**

Charles Ingram ("Ingram") appeals from his December 6, 2012 judgment of sentence.  We affirm.

The trial court summarized the factual and procedural history as follows:

> Following a non-jury trial on February 28, 2012, [Ingram] was convicted of Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver [a controlled substance,] 35 [P.S.] § 780-113(a)(30) ("PWID").  A motion for extraordinary relief was granted and [Ingram] was found guilty of only the 16 packets of cocaine discarded from his person.  This court sentenced [Ingram] to a term of incarceration of one and one half (1 1/2) to six (6) years.
>
> *   *   *

_____

[*]     Former Justice specially assigned to the Superior Court.

The evidence admitted at trial established that on April 16, 2011, at 7:00 a.m., Philadelphia Police Officers Gerald Passalacqua and John McCarron set up a narcotics surveillance operation on the 2500 block of North Bouvier Street in the City and County of Philadelphia. Officer Passalacqua has spent his entire police career in the narcotics unit, which at the time of this arrest was 19 years. He testified to being familiar with the manner in which crack cocaine is packaged and has seen it thousands of times on the street or in training. Officer Passalacqua's surveillance location was near the corner of Cumberland Street and Bouvier Street, approximately 150 feet from [Ingram] and 40 feet from the stoop of 2531 North Bouvier Street. Officer Passalacqua's observations were as follows: A young male was standing on the northeast corner. An unidentified African American male in blue clothing and an unidentified African American female in a black leather jacket approached the young man for a brief conversation. Following the conversation the male handed [Ingram] money. [Ingram] took it and walked north on Bouvier Street. [Ingram] entered a breezeway and walked back to a row house with an attached fence. [Ingram] bent down and retrieved . . . a clear plastic baggie. He removed small items and returned the baggie. Then [Ingram] walked to Bouvier and dropped two clear packets of an off-white chunky substance on the top of the steps of 2531 North Bouvier Street. [Ingram] walked back to the male and female on the corner of Bouvier and Cumberland Streets. The male walked up the steps of 2531 Bouvier Street and retrieved the two packets; he and the female departed afterwards.

Officer Passalacqua continued his observations of the intersection: [Ingram] was approached by an unidentified African American female in a black leather jacket and bright yellow clothing. The two had a brief conversation. Afterwards, the female handed money to [Ingram]. The female and [Ingram] walked north on the 2500 block of North Bouvier Street. The female remained on the street as [Ingram] entered the breezeway at 2439 North Bouvier Street and went to the rear of the property. [Ingram] bent down next to the fence and picked up a clear plastic bag. At this point, the female discovered Officer Passalacqua's position and exclaimed "Oh shit, the cops, you scared me!" She turned and walked south on North Bouvier Street toward Cumberland Street. Then [Ingram] exited the breezeway and yelled to the female, "Where are you going?"

Officer Passalacqua radioed for his back-up officer, John McCarron, to stop [Ingram]. Officer McCarron drove his marked police cruiser and turned onto the 2400 block [of] North Bouvier Street as [Ingram] fled on foot. Officer McCarron gave chase. Officer Passalacqua went to the location where he observed the clear plastic baggie and recovered 33 clear plastic packets containing an off-white chunky substance.

Officer McCarron pursued [Ingram] on foot through an [alley.] During the chase, Officer McCarron observed [Ingram] throw "blue items" into the yard. [Ingram] continued to flee another two or three houses and then stopped; Officer McCarron took him into custody. Following the apprehension, Officer McCarron returned to the location of the blue items and recovered 16 blue-tinted packets containing an off-white chunky substance, which field-tested positive for cocaine base.[1] Officer McCarron also recovered thirty dollars in United Stated currency consisting of a twenty and ten dollar bills.

Trial Court Opinion ("T.C.O."), 11/7/2013, at 1-3 (citations to notes of testimony omitted).

On December 14, 2012, Ingram filed a *pro se* motion for a new trial. On April 16, 2013, the motion was denied by operation of law. On May 7, 2013, Ingram filed a counseled notice of appeal. The trial court ordered Ingram to file a concise statement of errors complained of on appeal

---

[1]    On September 20, 2012, Ingram filed a Motion for Extraordinary Relief/Arrest of Judgment. That motion is not part of the original record. However, the parties and the court discussed the motion prior to the sentencing hearing on December 6, 2012. Ingram sought to have the trial court state whether it found Ingram guilty of PWID based upon the thirty-three packets found in the breezeway by Officer Passalacqua, the sixteen packets Ingram discarded that were found by Officer McCarron, or both. Notes of Testimony ("N.T."), 12/6/2012, at 4. This would determine whether a mandatory minimum based upon the weight of the drugs would apply. The trial court ruled that the PWID conviction was based upon the sixteen packets alone. *Id.* at 5.

pursuant to Pa.R.A.P. 1925(b). Ingram filed his concise statement. The trial court issued its opinion, and the matter is now ripe for our consideration.

Ingram presents one issue for our review: "Whether the evidence was sufficient to convict [Ingram] of possession with the intent to deliver sixteen (16) packets of cocaine." Ingram's Brief at 4.

Our standard of review for a sufficiency of the evidence challenge is well-settled:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

Ingram challenges only the sufficiency of the evidence for his PWID conviction. That statute states:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> \* \* \*
>
> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113.

> In order to convict an accused of PWID under 35 P.S. § 780–113(a)(30), the Commonwealth must prove that he "both possessed the controlled substance and had an intent to deliver that substance." ***Commonwealth v. Kirkland****,* 831 A.2d 607, 611 (Pa. Super. 2003). Pennsylvania courts interpreting § 780–113(a)(30), as it applies to PWID, have concluded that the Commonwealth must establish *mens rea* as to the possession element. ***Commonwealth v. Mohamud****,* 15 A.3d 80 (Pa. Super. 2010). When determining whether a defendant had the requisite intent to deliver, relevant factors for consideration are "the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large sums of cash[.]" ***Commonwealth v. Ratsamy****,* 934 A.2d 1233, 1237–38 (Pa. 2007). Additionally, expert opinion testimony is also admissible "concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use." ***Id.*** at 1238.

***Koch****,* 39 A.3d at 1001 (citations modified).

Ingram does not dispute his possession of the drugs, only the intent to deliver. Ingram argues that the evidence was insufficient for three reasons. First, Ingram states that the police did not observe Ingram hand drugs to either of the first two people in contact with Ingram, the "unidentified African[-]American male in blue clothing and [the] unidentified African[-]American female in a black leather jacket." Second, Ingram argues that the police did not stop the African-American man to see if he had drugs in his possession. Lastly, Ingram asserts that there was no expert testimony that would support the contention that any drugs were possessed with the intent to deliver. Ingram's Brief at 11-13.

The trial court stated that it found the evidence sufficient due to Ingram's behavior and the packaging of the drugs. Specifically, the court found that Ingram's interactions that were observed by Officer Passalacqua were consistent with the sale and distribution of drugs, namely the exchange of small items for cash. The court also found that the sixteen individual packets were the type commonly used for drug sales. T.C.O. at 4.

At trial, Officer Passalacqua testified that he saw Ingram accept money from the African-American man, then walk into a breezeway, take two small items out of a bag, and leave them on the steps for the man to take. Notes of Testimony ("N.T."), 2/28/2012, at 13-14. Officer Passalacqua also observed a similar transaction between Ingram and a second African-American woman. The woman gave money to Ingram and Ingram walked to the same breezeway. However, before the transaction could be completed, the woman spotted Officer Passalacqua and walked away. *Id.* at 15. When Officer McCarron arrived in his marked police car, Ingram fled. *Id.* at 16. Officer Passalacqua testified that, based upon his nineteen years' experience in the narcotics unit, the way the crack cocaine was packaged was consistent with packaging for sale. *Id.* at 18, 28. Officer Passalacqua was qualified as an expert for part of his testimony. *Id.* at 28.

Officer McCarron confirmed that Ingram fled when he arrived on the scene. Officer McCarron chased Ingram and saw him throw away "blue items." *Id.* at 30. After Ingram was taken into custody, Office McCarron returned to the spot where Ingram discarded the items and recovered

sixteen blue-tinted plastic packets that contained crack cocaine. Officer McCarron also recovered one twenty-dollar bill and one ten-dollar bill from Ingram. *Id.* at 31. Officer McCarron testified that he was unable to stop the African-American man and woman from the first transaction because they went into a house before he could detain them. *Id.* at 33.

Officer Passalacqua testified that, in each transaction, Ingram received one bill. *Id.* at 13, 15. The African-American man received two packets. *Id.* at 14. Officer Passalacqua also testified that the packets would sell for $5 or $10. *Id.* at 28.

While Officer McCarron was not able to stop the African-American man, there still was sufficient evidence to demonstrate that Ingram had the intention to deliver. Ingram discarded sixteen packets of crack cocaine that were consistent with the packaging used in the sale of the drug. Ingram fled when approached by the police officers. Officer Passalacqua observed two transactions that were consistent with selling drugs, even if the exchange was not hand-to-hand. No paraphernalia indicating personal use was found at the scene. Finally, Officer Passalaqcua valued the packets at $5 to $10 each. Ingram had a twenty-dollar bill, which was consistent with the African-American man handing Ingram one bill and receiving two packets, and a ten-dollar bill, which was consistent with Ingram receiving one bill from the African-American woman before she spotted Officer Passalacqua and left the area.

In a similar case, we found sufficient evidence for a jury to convict on PWID when the defendant was in constructive possession of twenty-two packets of cocaine, it was an area known for drug sales, the defendant was observed counting money and reaching into a location where drugs were later found, and the defendant fled when police approached. *Commonwealth v. Hutchinson*, 947 A.2d 800, 806-07 (Pa. Super. 2008). Here, in addition to the circumstances that are similar to *Hutchinson*, there are the transactions observed by Officer Passalacqua.

Based upon the circumstances, including Ingram's behavior and the cocaine's packaging, and viewing the evidence in the light most favorable to the Commonwealth, the evidence sufficed to support the PWID conviction.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/8/2014